UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JONNIE S. JOSEPH,

    Plaintiff,

v.                                                                                          CASE No. 8:05-CV-2092-T-TGW

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.
_____

O R D E R

The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[1]  Because the decision of the Commissioner of Social Security does not adequately evaluate the plaintiff's complaints of daytime sleepiness and a mental impairment, it will be reversed and the matter remanded for further consideration.

I.

The plaintiff, who was forty-six years old at the time of the administrative hearing and who has a high school education, has worked as a certified nursing assistant and a restaurant cook (Tr. 62, 67).  He filed a claim

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

for Social Security disability benefits, alleging that he became disabled due to a herniated disc in his back and neck (Tr. 61). The claim was denied initially and upon reconsideration.

  The plaintiff, at his request, then received a <u>de novo</u> hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of degenerative disc disease with resulting chronic lower back pain, obesity and obstructive sleep apnea (Tr. 17). She concluded that these impairments limited the plaintiff to sedentary work with an option to alternate sitting and standing or walking, and involving only occasional reaching in any direction with his left upper extremity (Tr. 19). The law judge determined that these limitations precluded the plaintiff from returning to past work (<u>id</u>.). However, based upon the testimony of a vocational expert, the law judge decided that there were jobs in the national economy that the plaintiff could perform, such as a food and beverage order clerk, surveillance system monitor, and information clerk (Tr. 20). The plaintiff was therefore found to be not disabled (<u>id</u>.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence,

and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff challenges the law judge's decision on several grounds. Two of the arguments demonstrate deficiencies in the law judge's analysis of the plaintiff's condition. Those deficiencies warrant reversal.

The plaintiff claims, first, that the law judge erred in rejecting his testimony that he falls asleep during the day (Doc. 17, pp. 11-13). The plaintiff suffers from sleep apnea, and the law judge found that this was a severe impairment. Due to this condition, the plaintiff asserts that he has difficulty sleeping at night. Accordingly, the plaintiff testified at the hearing

that he "fall[s] asleep all the time" and explained that, "[u]sually if I sit down, I fall asleep" (Tr. 280, 287).

The law judge discounted the plaintiff's testimony, concluding that "the record contained no complaints of his falling asleep during the daytime" (Tr. 18). The law judge was mistaken. The plaintiff did report his sleepiness to a treating physician, Dr. Kyle Morsch. Dr. Morsch's treatment notes of February 13, 2003, state that the plaintiff "knows he has breathing difficulty and choking for air at night, daytime sleepiness and after he parks his car he has often fallen asleep in the car, but not while driving" (Tr. 220).

The Commissioner seeks to dismiss this evidence on the ground that it was the only occasion of the plaintiff falling asleep in the daytime. However, the note itself refers to this happening often. Moreover, on March 10, 2003, the plaintiff reported to Dr. Morsch that he was having an increase in daytime sleepiness (Tr. 213). Further, on March 27, 2003, the plaintiff told Dr. Morsch that he was "very irritable and sleepy in the daytime" (Tr. 210). In addition, Dr. Morsch opined that the plaintiff's sleep apnea with morbid obesity were "causing his daytime sleepiness" (Tr. 221). Notably, another treating physician labeled the plaintiff as suffering from hypersomnolence (Tr. 177).

Furthermore, the plaintiff contends in a related argument that he suffers from obesity, as the law judge found, and that this severe impairment should have been considered in connection with the allegations of daytime sleepiness. See Social Security Ruling, SSR 02-1P, 2000 WL 628049 (S.S.A.). Thus, the Social Security Ruling expressly states that "some people with obesity also have sleep apnea" and that "[t]his can lead to drowsiness and lack of mental clarity during the day." Id. at *6.

The Eleventh Circuit articulated a number of years ago a standard for assessing allegations of pain and other subjective complaints. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." This standard applies to complaints of subjective conditions other than pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). If the law judge discounts the plaintiff's testimony concerning subjective complaints, he must articulate explicit and adequate reasons for doing so. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).

The law judge's reason for discounting the plaintiff's testimony that he falls asleep during the day is plainly inadequate. The only reason given is that the record contained no complaints of the plaintiff falling asleep during the daytime (Tr. 18), and that reason is clearly wrong. Moreover, there is evidence in the record supporting the plaintiff's claim of daytime sleepiness, as previously explained, and that evidence was not addressed at all. Consequently, the law judge's assessment of the plaintiff's testimony concerning daytime sleepiness is both erroneous and insufficient.

The Commissioner seeks to justify the law judge's erroneous evaluation on the ground that no doctor has articulated functional limitations due to daytime sleepiness. However, the absence of a physician's statement of functional limitations does not somehow rehabilitate the law judge's fundamentally flawed credibility determination. It is, after all, the law judge's responsibility to make an assessment of the plaintiff's residual functional capacity based upon a reasonable evaluation of the evidence.

Further, the Commissioner's suggestion that this was harmless error is unpersuasive. At the hearing, the plaintiff's representative included in a hypothetical question to the vocational expert the assumption of a severe impairment in concentration and memory, impaired persistence and pace, and

the tendency to fall asleep while sitting down (Tr. 294-95). The vocational expert testified that an individual with those limitations and restricted to sedentary work would not be able to perform any jobs (Tr. 295). While this hypothetical was not limited to the condition of falling asleep while sitting down, the inclusion of that problem certainly indicates that further, and better, evaluation of that problem is warranted. Moreover, as a matter of common sense, it seems that an inability to stay awake during the daytime could preclude substantial gainful employment. Consequently, the law judge's evaluation of the plaintiff's testimony regarding daytime sleepiness cannot be disregarded on the theory of harmless error. Rather, the error warrants remand for proper consideration of that issue.

      The plaintiff also makes a persuasive argument that the law judge's assessment of his mental impairment was flawed. The law judge on this issue concluded that the plaintiff's mental impairment was nonsevere (Tr. 17). The court of appeals has stated that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Under

this definition, the law judge's determination of a nonsevere mental impairment would be correct if, as the law judge found, the plaintiff had only mild limitations of activities of daily living, social functioning, and concentration, persistence or pace, and no instances of deterioration or decompensation in work or work-like settings (Tr. 17).

The plaintiff argues that the law judge erred in determining that he only has mild limitations in activities of daily living, social functioning, and concentration, persistence or pace (Doc. 17, pp. 17-19). In support of his argument, the plaintiff refers to treatment notes from a Winter Haven hospital describing his symptoms of defensive and agitated attitude, depression, anger outbursts, minimal verbal interaction, irritated mood, angry affect, poor insight and judgment (id. at p. 17). He also asserts that he was assessed a Global Assessment of Functioning ("GAF") of 45 and 50, which indicate serious symptoms, as well as GAF ratings in the 50's, which indicate moderate symptoms. See Diagnostic and Statistical Manual of Mental Disorders (4th ed.), p. 32.

The plaintiff also relies upon a report of an examining physician, Dr. Eduardo Ysern, who diagnosed an adjustment disorder with depressed and anxious mood (Doc. 17, p. 18). Dr. Ysern concluded that the plaintiff's

emotional state has affected his persistence and pace (Tr. 136). Dr. Ysern opined further that the plaintiff may have difficulty in responding appropriately to peers and to the public while in work settings (Tr. 136-37).

The law judge did not explain the basis for her conclusion that the plaintiff has only mild mental limitations. Seemingly, it was based upon the opinion of a non-examining reviewing psychologist (Tr. 138). That opinion, in turn, appears to be grounded solely upon the examination by Dr. Ysern, but does not reflect Dr. Ysern's assessment regarding the plaintiff's persistence or pace, and his ability to work with others and deal with the public. Moreover, the non-examining reviewer did not have the benefit of the notes regarding the plaintiff's mental health treatment, which contained GAF ratings showing serious to moderate symptoms. In short, if, as it appears, the law judge based her finding of a nonsevere impairment upon the non-examining reviewer's assessment, that provides a problematic foundation for the finding, in light of the other mental health evidence that was in the record.

At the very least, the law judge should have explained why she was discounting Dr. Ysern's opinions regarding the plaintiff's persistence and pace and his ability to work with others and deal with the public. Further, she should have explained why she was discounting the mental health treatment

notes that reflect not only the GAF ratings, but also show mood swings and an irritability that raise significant questions about the plaintiff's ability to work with others and deal with the public.[2]  The law judge was required not only to consider each item of impairment evidence, but she was also required to state the reasons for her decision on that evidence.  Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986).  In the absence of an explanation by the law judge on this point, meaningful judicial review is not possible.  Hudson v. Heckler, 755 F.2d 781, 785-86 (11th Cir. 1985).  Therefore, this deficiency in the decision also warrants a remand.

       The plaintiff asserts, in addition, that the law judge improperly rejected his complaints of pain and limitations in walking, standing and lifting (Doc. 17, pp. 15-16).  This contention is unpersuasive and does not merit extended discussion.

       The law judge recognized the need to articulate a credibility determination and referred to the law governing such determinations (Tr. 18). Moreover, the law judge considered the plaintiff's various complaints, including the plaintiff's claims regarding his walking, standing and lifting

---

[2]It is recognized that the GAF ratings were not assigned by a psychiatrist or psychologist, but if the ratings are discounted on that basis, the law judge needs to explain why.

(id.), and set forth reasons for discounting, at least to some extent, the plaintiff's subjective allegations (id.). Notably, the law judge did not totally reject the plaintiff's subjective complaints, but rather concluded that the plaintiff had severe restrictions that limited him to sedentary work with an option to alternate between sitting and standing or walking, and with reaching restrictions with his left upper extremity (Tr. 19). The law judge could reasonably conclude that "the testimony of the [plaintiff], particularly as it related to alleged physical limitations, was inconsistent with the weight of the medical evidence" (Tr. 18). Moreover, no doctor has opined that the plaintiff has physical limitations that are greater than those found by the law judge.

IV.

For the foregoing reasons, the law judge's decision is flawed in two respects. Therefore, the Commissioner's decision is hereby REVERSED and the matter REMANDED for further consideration. The Clerk shall enter judgment in accordance with this Order and close this case.

DONE and ORDERED at Tampa, Florida, this <u>2nd</u> day of February, 2007.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE